UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



---

PALM BEACH MARITIME MUSEUM,
INC.,

                    Plaintiff,

-against-

HAPOALIM SCURITIES USA, INC., a
foreign corporation, EDWARD
CHAN, PATRICIA AGUIAR, FABIO
D'ASCOLA, and BILL BURCKHART,

                    Defendants.

---

19 Civ. 908 (LAP)

MEMORANDUM AND ORDER

LORETTA A. PRESKA, Senior United States District Judge:

    Palm Beach Maritime Museum, Inc. ("Plaintiff") brings a
number of state and federal claims, including for securities
fraud, against Hapoalim Securities USA, Inc. ("Hapoalim"),
Edward Chan ("Chan"), Patricia Aguiar ("Aguiar"), Fabio D'Ascola
("D'Ascola"), and Bill Burckhart ("Burckhart") (collectively,
"Defendants").  The claims stem from a bond offering facilitated
by Hapoalim that was designed to expand and improve Plaintiff's
charter school.  Plaintiff alleges that Defendants engaged in
fraudulent activity relating to this bond issuance by concealing
certain material information from Plaintiff's board of
directors.  Defendant Hapoalim moves to dismiss the federal and
state claims on a variety of grounds, Defendants Chan and
D'Ascola join in that motion and argue additional grounds for

1

dismissal.  For the reasons stated below, Defendants' motions to dismiss are granted.

BACKGROUND

Plaintiff is a not-for-profit corporation approved as a charter school in Florida.  (Complaint ("Compl."), dated May 7, 2018 [dkt. no. 1], at ¶¶ 9, 18).  Plaintiff entered into an agreement with Hapoalim to finance the purchase and expansion of a property known as "Lantana 2."  (Compl. at ¶¶ 1-2).

Plaintiff alleges that its bond purchase agreement with Hapoalim was based on a material misrepresentation, namely, that the seller of Lantana 2 would allocate $2.5 million of the $8 million purchase price for the development of the property.  (Compl. at ¶ 196).  Hapoalim and its employee Chan are alleged to have "intentionally and falsely misled [Plaintiff's] board of directors into approving the issuance of the Bond."  (Compl. at ¶ 197).  Burckhart, chairman and secretary of Plaintiff's board, is alleged to have "stayed quiet" with the information relating to the side development agreement.  (Compl. at ¶ 272).  Aguiar, a development consultant for the project, is also alleged to have "stayed silent while the [Plaintiff's] board of directors, relying on deliberate false information, approved the bond issuance."  (Compl. at ¶ 309).  Finally, D'Ascola, the representative of the owner of Lantana 2, is alleged to have

2

misrepresented the same development facts to Plaintiff's board of directors.   (Compl. at ¶ 346).

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a party may move to dismiss claims for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).  A plaintiff asserting subject matter jurisdiction has the burden of proving that it exists by a preponderance of the evidence. See Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  "[I]n resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings."  See Makarova, 201 F.3d at 113 (citing Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986)).

To survive a defendant's Rule 12(b)(1) motion to dismiss, a plaintiff must allege facts that affirmatively and plausibly suggest that he or she has standing to sue.  Amidax Trading Grp. v. S.W.I.F.T. SCRL, 671 F.3d 140, 145 (2d Cir. 2011).  This is because under Article III of the Constitution, federal courts can resolve only "cases" and "controversies."  U.S. Const. art. III § 2.

## DISCUSSION

### Federal Claims

Plaintiff asserts jurisdiction against each defendant under federal securities laws, specifically Section 10(b) of the

3

Securities Exchange Act of 1934 ("1934 Act") (Compl. at 4, 43, 60, 66, 74).

The 1934 Act makes it illegal for any person "to use or employ . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b). The Securities and Exchange Commission promulgated Rule 10b-5, which prohibits, among other things, fraud and deceit in connection "with the purchase or sale of any security." 17 C.F.R. § 240.10b-5.

Although reference to private rights of federal action is nowhere to be found in the text Congress passed, the Supreme Court "confirmed with virtually no discussion the overwhelming consensus of the District Courts and Courts of Appeals that such a cause of action did exist." Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 730 (1975); Superintendent of Ins. of State of N. Y. v. Bankers Life & Cas. Co., 404 U.S. 6, 13 (1971). This judicial creation contains an important limitation – the cause of action is limited to "only purchasers and sellers of securities [] and those with contracts to purchase and sell securities." Fin. Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1283 (11th Cir. 2007). This is "a bright-line rule" that has been reaffirmed hundreds of times. In re Refco Capital

Markets, Ltd. Brokerage Customer Sec. Litig., 586 F. Supp. 2d
172, 179 (S.D.N.Y. 2008), aff'd sub nom. Capital Mgmt. Select
Fund Ltd. v. Bennett, 680 F.3d 214 (2d Cir. 2012).

Plaintiff is neither a buyer or seller of securities, nor
is Plaintiff a constructive buyer or seller of securities.  In
the Bond Purchase Agreement, there are three relevant parties
listed.  (Defendant Hapoalim Securities USA, Inc.'s Memorandum
In Support Of Its Motion To Dismiss Complaint ("Hapoalim Mot.")
Exhibit 1, dated June 5, 2018 [dkt. no. 8], at 24).  Hapoalim is
"the Underwriter," Plaintiff is "the Borrower," and the Public
Finance Authority, a unit of the government of the State of
Wisconsin, is "the Issuer."  (Id.)  The "Purchase and Sale"
clause of the agreement states, "the Underwriter hereby
agrees to purchase [] and the Issuer agrees to sell" the bonds.
(Id. at 25).  Nowhere is Plaintiff mentioned in the operative
section of this clause.

The proceeds of that sale were to be "used to fund a loan
to the Borrower . . . pursuant to the terms of a Loan Agreement"
between the Issuer and the Borrower.  (Id.)  In other words, the
Public Finance Authority would sell bonds to Hapoalim.  The
proceeds of those bonds would be securely loaned to Plaintiff.
Plaintiff would repay the Public Finance Authority.  That is the
essence of the transaction.

The Court can immediately dispose of Plaintiff's attempt to use the title of the agreement, i.e. "Bond Purchase Agreement," as evidence that Plaintiff either bought or sold securities. The content of the agreement was that the Issuer and Underwriter were the seller and buyer of the securities at issue.

Plaintiff goes on to argue "[t]he very bond transaction contemplated by the [Bond Purchase Agreement] and the [Preliminary Limited Offering Memorandum] qualifies [Plaintiff] as a seller of a security with standing to pursue federal and state securities claims." (Palm Beach Maritime Museum, Inc.'s Opposition To Defendant Hapoalim Securities USA, Inc.'s Motion To Dismiss, dated July 3, 2018 [dkt. no. 18], at 4). Plaintiff cites to Realtek Indus. v. Nomura Sec., 939 F. Supp. 572 (N.D. Ohio 1996) for this proposition.

This citation is unavailing. In Realtek, the court found that the plaintiff sufficiently pleaded standing based on a showing that there was an alleged "oblig[ation] to sell a security" that was not "completely specious." 939 F. Supp. at 582. A letter in that case contemplated that the plaintiff "would be the issuer of rated securities that would be purchased." Id. No such facts exist here. Plaintiff had no obligation to sell or purchase securities. In Realtek, the relevant language of the agreement said that plaintiff or a related company, "would be the issuer of rated securities that

6

would be purchased." Realtek, 939 F. Supp. 572, 582. There is simply no similar contractual language that contemplates an analogous issue and purchase by the Plaintiff here.

Additionally, Plaintiff asserts that an issuer of notes for significant capital improvements is a seller with standing. Assuming this is true, this only applies to the issuer, the Public Finance Authority.

Recognizing that the explicit terms of the agreements do not support the argument that Plaintiff was a seller or purchaser of securities, Plaintiff argues, "[e]ven the guarantor of such a significant note has standing as a seller." The Eleventh Circuit foreclosed this interpretation. "Granting standing to a guarantor as a purchaser would contravene the rule that this court announced in Pelletier v. Stuart-James Co., Inc., 863 F.2d 1550 (11th Cir. 1989), that, consistent with Blue Chip Stamps, a plaintiff must have actually purchased or sold, or entered into an enforceable contract to purchase or sell, securities to have standing under Rule 10b-5." Fin. Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1283 (11th Cir. 2007).

Plaintiff's argument to the contrary – that a guarantor can be a seller of securities – finds its only real support in Banco Nacional de Costa Rica v. Bremar Holdings Corp., 492 F. Supp.

364, (S.D.N.Y. 1980).  (Pl. Opp. at 5).  The Court will call this the "constructive seller" theory.

As a threshold matter, it is worth noting that Banco Nacional and its constructive seller theory is an unusual case whose peculiar facts militate against its broad reading.

In Banco Nacional it was alleged that both the purchaser and seller of promissory notes relating to the construction of a sugar mill perpetrated a fraud against the guarantor-plaintiff to induce the guarantee.  492 F.Supp. at 366-67.  The guarantor-plaintiff in that case was more precisely a "guarantor por aval."  Id.  This is a legal term used in Latin America to denote an absolute and unconditional guarantee.  Id.

This is relevant because the guarantee made in Banco Nacional was an agreement by the plaintiff "to guarantee payment of principal and interest on four short-term promissory notes to be issued by [seller/issuer] to [borrower]."  Id.  As guarantor por aval, plaintiff in that case "st[ood] in the shoes" of the issuer-seller.  Id. at 371.

That is neither the type of guarantee, nor the type of transaction alleged here.  Here, Palm Beach is not acting as a financier unconditionally guaranteeing the notes that the Public Finance Authority is issuing to Hapoalim.  Instead, Palm Beach is acting more as Corporacion Azucarera del Sur, the defendant in Banco Nacional, that actually borrowed the money to purchase

8

the sugar mill equipment.   For this reason, making the comparison to plaintiff in Banco Nacional "ignores the historical development of the transaction at issue [--] a development which is the essence of the 'context' in which the notes were issued."  Id. at 369.

The court in Banco Nacional limited the holding to this unique guarantee in that case and "express[ed] no view, of course, as to whether an institution or individual that provided a more limited, contingent guarantee than the 'guarantee por aval' involved [t]here would have standing to sue under Rule 10b-5 in similar circumstances."  492 F. Supp. at 372.  "Indeed, one of the very small number of cases to cite Banco Nacional in the nearly twenty-five years since its issuance drew on this footnote in rejecting an extension of its holding to a typical guarantor."  MBIA Ins. Corp. v. Spiegel Holdings, Inc., 2004 WL 1944452, at *3 (S.D.N.Y. Aug. 31, 2004) (citing Rayman v. People's Savings Corp., 735 F.Supp. 842, 850 (N.D. Ill. 1990)).

While a court in this district did not directly address "the merits or continued viability of the holding of Banco Nacional after more than twenty intervening years of the bright-line Blue Chip Stamps standard," it read the case narrowly. MBIA, 2004 WL 1944452 at *4.  Specifically, the MBIA court read Banco Nacional has holding that plaintiff there "had, in effect, succeeded to the rights of the seller."  Id. at *3.  Here, no

succession is alleged.  The Public Finance Authority still has all of its rights, and it is notable that unlike the defendant-issuer in Banco Nacional, the Public Finance Authority is not defunct.

Plaintiff argues that its analogy to Banco Nacional stands even after MBIA in spite of all of this because the plaintiff in that case was simply an insurer and Plaintiff here is a "direct seller" of promissory notes to the Public Finance Authority. Plaintiff argues that the loan agreement and simultaneous assignment to the bond trustee (and subsequent sale) is a contract for the sale of a security.  (Pl. Chan Opp. at 5 n.8).

This assertion is made without precedential support.  While it may be true that an insurer is different from a guarantor, the MBIA court favorably cited Peltz v. D'Urso, 1993 WL 664621, at *1 (S.D.N.Y. Oct. 7, 1993).  In Peltz, the court held that while a guarantor may sue under common law fraud based on losses, "he may not sue as a 'purchaser' under the federal securities laws. Permitting [guarantor] to sue as a purchaser would subject the bright-line rule of Blue Chip Stamps to the type of 'case-by-case erosion' explicitly rejected by the Supreme Court."  1993 WL 664621 at *1. This Court will not countenance an erosion of Blue Chip Stamps and its progeny.

Finally, one concern this Court reads in Banco Nacional was that both the seller and purchaser were adverse to the

guarantor-plaintiff.  The alleged fraud perpetrated in that case would have no interested party with standing had the court not granted standing to plaintiff.  Combined with the unconditional guarantee and the fact that this standing doctrine is entirely a judicial creation, the court advanced its novel constructive seller theory of standing.  Here, however, the Public Finance Authority is perfectly capable of alleging fraud against Hapoalim.

Additionally, Plaintiff cites to the loan agreement, which says that it would "execute and deliver" to the Public Finance Authority two promissory notes.  (Pl. Chan Opp. at 4).  This language is used as support for the proposition that a sale of a security has taken place – the emphasis being on the security inquiry and not the sale inquiry.  Plaintiff's citation to the "family resemblance" test is not relevant to the determination of whether it sold or bought securities – it is relevant only to the determination of whether an instrument is a security.  Cf. Reves v. Ernst & Young, 494 U.S. 56 (1990).  In Reves, the notes at issue were "offered and sold to a broad segment of the public" by a co-op.  Id. at 68.  There was no doubt that they were sold to the public.  In this case, however, Plaintiff had absolutely nothing to do with selling any securities to anyone in any way analogous to Reves.

Plaintiff points out that the Court of Appeals approvingly cited Banco Nacional as holding that the "guarantor on loan had standing [under § 10(b)]." Lawrence v. Cohn, 325 F.3d 141, 153 (2d Cir. 2003). This was a single citation simply to show that the Blue Chip Stamps rule "was adapted to new circumstances." Id. Indeed, the Court of Appeals found in that case that the plaintiffs did not satisfy the standing requirements to satisfy "even a broad reading of Blue Chip Stamps." Id. at 154.

Plaintiff also classifies the Public Finance Authority as a "conduit" citing to the Municipal Securities Rulemaking Board's glossary of terms. (Pl. Chan Opp. at 4). This glossary definition is not a legal conclusion, especially in light of the bright-line rule of Blue Chip Stamps and Plaintiff's aforementioned inability successfully to analogize to Banco Nacional.

Plaintiff was neither a purchaser nor a seller of securities with respect to all defendants, and therefore Plaintiff fails to state a claim under the 1934 Act. Accordingly, the federal securities claims under the 1934 Act are dismissed with prejudice.

### State Claims

With respect to the remaining state law claims, a district court with original jurisdiction in a civil action has "supplemental jurisdiction over all other claims that are so

12

related to claims in the action within such original
jurisdiction that they form part of the same case or controversy
under Article III of the United States Constitution." 28 U.S.C.
§ 1367(a). However, a district court may "decline to exercise
supplemental jurisdiction over a claim" if it "has dismissed all
claims over which it has original jurisdiction." 28 U.S.C.
§ 1367(c). In determining whether to exercise supplemental
jurisdiction over state-law claims, a district court should
consider "the values of judicial economy, convenience, fairness,
and comity." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350
(1988). Generally, "if a plaintiff's federal claims are
dismissed before trial, the state law claims should be dismissed
as well." Oneida Indian Nation of N.Y. v. Madison Cty., 665
F.3d 408, 437 (2d Cir. 2011) (internal quotation and citation
omitted).

Plaintiff does not present any viable federal claims due to
its failure to state a claim. There have been no proceedings
before this Court other than Defendants' motion to dismiss. As
such, this Court sees no reason to exercise supplemental
jurisdiction over Plaintiff's state claims.

CONCLUSION

The Defendants' motions to dismiss the federal securities claims under the 1934 Act with prejudice [dkt. nos. 7, 44, 45] are granted.  All other claims, including the state securities law claims, are dismissed without prejudice.  The Clerk of Court shall mark this action closed and all pending motions denied as moot.

SO ORDERED.

Dated:    New York, New York
          April *10*, 2019

                    _____
                    LORETTA A. PRESKA
                    Senior United States District Judge

14